Judge Coalter
delivered the opinion of tho Court*
This is a suit by the appellee, as administrator of John dircher of Amelia, who was executor of John dircher oL Chesterfield, against the appellants, charging that his intestate was largely in advance to the estate, and that suits were brought against him in his life time, and which were still'pending against the appellee as his representative, to recover large sums as due from the estate; that the appellants are legatees of the said John dircher of Chesterfield, and had illegally and without the consent of the executor, possessed themselves of the whole of the assets, without giving refunding bonds according to law, &c. The object of the bill is, to have a decree against the appellants for the monies so advanced by the executor beyond what he had received, and to have refunding bonds, in case future debts should be established.
It appears from the answers and documents in the cause, that about twelve years after the executor had qualified and undertaken his trust, the appellant Robertson and his wife, in right of his wife, exhibited their bill in Chesterfield County Court, against the executor for a settlement *323 of the executorial account, and for their one-fifth part of the slaves and other personal property, after specific legasics, and which they claimed under the will. To this bill, so answer could ever he obtained, though various coridiiional decrees were made. Finally, another of the daugh tors married, and she with her husband, and also the other appellants (then under age,) were made parties plaintiffs;, and in 1808, about 18 years after qualification of the executor, a deoreo is entered by consent appointing "commissioners to allot to the plaintiffs severally their one-fifth part as aforesaid; and Duncan Rose was appointed to slate and settle the executorial account Ho status that ho gayo notice to the executor to attend him, hut he did not do so;, nor did he, make, any reply on the subject..
In 1804, the commissioners report that they had made allotment, which is confirmed, and the executor directed to deliver over the property so allotted, on the parties, or .some one tor them, giving bond to indemnify him against debts thereafter coming against the estate. This bond, the appellants, in their answer, say, was never demanded of them. The suit still went on; and different sets of commissioners were appointed to settle the executorial account, some of whom, it appears, gave notice to the executor to appear with his accounts and vouchers; but, this he never did. The last of those orders is made in July, 1810, about twenty-six years after the qualification of the executor; but, from that time until his death, (which happened about the year 1811, or 1812,) no account was rendered. This suit was instituted and the bill filed in 1816, to which the answers were filed in 1,817; and in 1819, (about f>C years after the qualification of the executor,) the accounts are referred to a commissioner. He reports, that the appellee produced the books of his intestate, containing his administration accounts, acknowledged to bn in his own hand writing; but, not having vouchers for all the debts, he insisted that those accounts were either to be taken ar sorrect throughout, or that he had a right to throw off fren?. *324 the credits, a sum equal to the debits which were not vouch» ed for; or, he proposed to the appellants, that the com mis sioner should make out his account of debits from the vouchers, and allow all credits which the appellants could establish by evidence. The appellant John Archer, however, who attended the settlement, stated that from the lapse of time, he could not establish credits, so as to change the accounts in their favour, from what they appeared on the books; and the commissioner, therefore, proceeded to state the accounts from those books, merely correcting some errors apparent upon their face, and reported a balance of principal and interest as due- to the executor, of $3061 13.
The appellants excepted to this report in toto, alleging that the principle so established by the commissioner, was illegal as applicable to administration accounts.
Two questions present themselves; the first, arising on the report of the commissioner, and the exception thereto; the second, whether, after such a lapse of time, and under all the circumstances aforesaid, it was competent for the appellee to call for a settlement of the executorial accounts, so as to charge the appellants for advances made by the executor, beyond assets received; or for any other purpose, except to have refunding bonds executed, as directed by the decree of the County Court, so as to place the estate, as to the debts now claimed from it, in the same situation, as it would have stood, had such bonds been originally-given ?
We are of opinion, as to the first point, that the rule, that where a party relies on an account furnished by the other party, and claims the benefit of the credits, he is bound to take it altogether and admit the debits also, unless he can surcharge and falsify it by proofs, is not applicable to an account furnished by an executor. Where there is no trust or confidence, neither party is bound by any legal obligation to furnish the other with charges against himself, since each can and ought to preserve the evidences of his charges against the other; and the account rendered by *325 either must be taken as the confession of the party, and as such, on the general principles of evidence, must not be garbled, but taken altogether, except so far as it may be disproved. But as to executors, they are under a moral and equitable, and indeed a legal obligation, from the very nature of their undertakings, to furnish those to whom they are accountable, the means of charging them jlo the full extent ot their liabilities; White v. Lady Lincoln, 8 Ves. 363; for, those having a right to claim an account, have no other perfect means of getting this information.
The decree is, therefore, erroneous in not sustaining the exception to the commissioner’s report, in this particular.
As to the second question, we are of opinion, that after so great a lapse of time, and particularly in a case accompanied with the other circumstances above stated, it might be of mischievous tendency to sustain a suit like the present, except for the purpose of procuring refunding bonds against legatees, who had so long ago received their share of the estate, and consequently had no right to suppose that they were in debt to the estate; unless indeed, it was the wish of such legatees to have an account taken.
But, we are further of opinion, that as the appellants did not, revive or renew their suit, but permitted the matter to rest for four or five years after the death of the executor, the most certain way of obtaining justice in this case is, to consider all matters between the executor and the legatees, so far as relates to actual receipts and disbursements by the executor, up to the time of his death, as finally closed; that the appellants ought, respectively, to have been decreed to execute bonds with good security to the appellee, to indemnify the estate of his intestate against all future demands coming against the estate of the testator John Archer, so far as the value of the estate respectively received by them; so as to place the parties in the situation they would have been in, had such bond been given when the property was received; and that the bill, for every other purpose, be dismissed; and that each party pay their own costs in the said Court of Chancery,,

 The President and Judge Cabell, absent.